AUGUSTIN FLORES v. J. J. TERRELL, COMMISSIONER.

No. 1510. Decided March 19, 1906.

**1.—School Land—Application to Purchase—Indorsement on Envelope.**

The requirement, by section 3 of Act of April 15, 1905, that an application to purchase school land to come on the market at some future date shall be endorsed on the envelope as prescribed in such section, applies only to lands which are to be for sale at a time subsequent to the making of such application, not to all that are to be offered for sale at a date future to the passage of the Act. (P. 577.)

**2.—Same—Statutory Construction—Purpose of Law.**

The provision in section 3 of the Act of April 15, 1905, as to indorsements on the envelope containing an application to purchase school land, was for the purpose of declaring an exception to the general rule, applying only to lands to come on the market at a future date, whereas all school land, by the terms of the law, was offered for sale only at a date subsequent to the passage of the law. The purpose was to secure fair competition by keeping the amount of the respective offers secret until the day for awarding the land to such competing purchasers. But after that date had passed, the first applicant complying with the law being entitled to purchase, there was no competition and no reason for keeping his bid secret. (Pp. 577, 578.)

**3.—School Land—Case Stated.**

One applying, on September 1, 1905, to purchase school land under the Act of April 15, 1905, but omitting to place on the envelope containing his application the indorsement specified in section 3 of such Act, was entitled, as against one applying later to purchase the same land at a less price, but making such endorsements on the envelope, to purchase the land and to have mandamus against the Commissioner of the General Land Office to compel its award to him. (Pp. 576–578.)

Original application in the Supreme Court for writ of mandamus against the Commissioner of the General Land Office.

*Sanford & Douglas,* for relator.—When land is on the market the day the application is filed, the envelope used in transmitting said application is not required to be indorsed that the land came on the market on September 1, 1905. (Sec. 11 of the Act of April 15, 1905.) "When the land is to come on the market at some future date, the envelope shall have indorsed thereon," etc. (Sec. 3 of

the same act). "Land that is or may be on the market and not filed on as herein provided, may be filed on and sold to anyone at any time upon proper applications filed in the land office, as herein provided, except the envelope enclosing the application shall not be required to have any memorandum thereon" (Sec. 4 of the same act).

*R. V. Davidson*, Attorney-General, and *W. E. Hawkins*, Assistant, for respondent.—The statute speaks from the date upon which it becomes effective. Consequently this tract was, for the purposes of this act, "to come on the market at some future date"; hence it became necessary that the envelope in which the application of relator to purchase said land was mailed to the Commissioner of the General Land Office should be indorsed as required by section 3 of said act.

The statutory requirements as to indorsement upon an envelope in which is to be mailed an application to purchase land were not designed purely and solely for the protection and benefit of the bidder, which he may waive at will. Those requirements are material features and factors in the comprehensive scheme which the Legislature has provided for the advertisement and sale of vast areas of public land, and are reasonable requirements in the nature of conditions upon which bids would be considered by the Commissioner of the General Land Office, and were also designed to methodize and expedite the work of the Land Office, and at the same time afford protection to all concerned.

GAINES, CHIEF JUSTICE.—This is a petition for a writ of mandamus to compel the Commissioner of the General Land Office to award to the relator, as a purchaser, a small tract of school land lying in Maverick and Zavala counties, which he had applied to purchase. R. P. Oden, who had made application to purchase the tract, and whose application had been accepted, was made a corespondent.

The following facts are shown by the pleadings and are not contested: The parcel of school land in controversy was, on the 2d day of June, 1905, duly classified and appraised at $1.50 per acre. It was at the time subject to a lease, which expired on the 30th day of July of that year. Under the statute in relation to the sale and lease of school and asylum lands, which was approved April 15, 1905, and which went into effect on that day, this tract came upon the market for sale on the 1st day of September of that year. On that day the relator filed in the Land Office an application for the purchase of the land at $2.16 per acre, which, in all respects save one, was in full compliance with the requirements of the statute. The envelope containing this application did not have the indorsement specified in section 3 of the act above cited, and for this reason was rejected by the Commissioner. On the 2d day of September the respondent, Oden, filed his application to purchase for the sum of $2.11 per acre, and it is conceded to be in full compliance with the statute in every respect. Thus it is seen that the application of the relator contained not only the higher bid, but that it was, in point of time, prior to that of Oden, the corespondent. The simple question, therefore, is, did the failure of the relator to place upon the envelope the indorsement prescribed in section 3 of the act

mentioned render it invalid? So much of that section as speaks of the indorsement of the envelope reads as follows: "Said application, affidavit and obligation shall be filed in the Land Office through due course of mail, and not by anyone in person, in an envelope addressed to the Commissioner of the General Land Office at Austin, Texas; and when the land is to come on the market at some future date, the envelope shall have indorsed thereon as follows: 'Application - to buy land; section ———, block ———, grantee ———, county ———, date on market ———,' and the blanks shall be properly filled out. When the envelope so indorsed is received in the Land Office, it shall be safely and securely kept and preserved by the Commissioner or his chief clerk, without being opened until the day following the date indorsed thereon as to when the land comes on the market; and one or both of them shall begin at 10 o'clock a., m., on the day following the day the land comes on the market, to open the envelopes for inspection of the applications and such action as is herein provided for and in the presence of the applicants, if they desire to be present, or in the presence of such person as they may designate to represent them; and said applications shall immediately be filed, together with all other applications received up to that time for the same land." The divergence of construction as between the relator and respondents seems to proceed from the words, "and when the land shall come on the market at some future date." The Commissioner, as we understand the argument filed in his behalf, claims that the word "future" refers to the date on which the statute was to take effect; and that since this land came upon the market subsequent to April 15, 1905, no application to purchase school lands of the character of that involved in this suit could be valid without the indorsement prescribed by the provision quoted. We can not concur in this conclusion. Since by section 11 of the act itself all the school lands were taken off the market, the construction claimed would make the provision applicable to all attempts to purchase, whereas the the words last quoted were evidently inserted for the purpose of declaring an exception to a general rule.

We think the construction contended for by the relator the true one, namely, that the provision in question was intended to apply to cases in which, by reason of expiration of leases and the like, the lands would come on the market upon some day in future, and the Commissioner should offer them in advance for sale on that date. In such a case there exists a substantial reason for making a difference between applications filed previous to the first day of sale, and those made thereafter. The object of the law was to sell to the highest bidder, and it was reasonable to presume that, when bids were to be received for future sales, in many cases there would be more than one bidder; and justice required that each competing bidder should be protected in the secrecy of his bid, should he so elect. This was well provided for by prescribing such an indorsement upon the envelope as would apprise the Commissioner that it was an application to purchase such a section of land, and by also prescribing that it should not be opened until the day after the land was subject to sale. But after the land came upon the market,

there was no longer any likelihood of competitive bidding, and no longer any secrecy as to the amount offered. The Commissioner was bound to take the applications as they came, and the first in point of time acquired the right to purchase the land. Hence any provision about the indorsement of the envelope, after the land had come upon the market, was not only unnecessary, but would have been cumbersome and inexpedient. We therefore conclude that when the Legislature spoke of land "to come on the market at some future date," they meant merely such lands as were to be subject to sale at a time subsequent to the making of the applications, and that the word "future" was intended to relate to the time at which the application was made, and not to the time at which the statute was passed, or should become effective.

We are of opinion, therefore, that the relator's application was valid, and that, since he was both prior in time and the higher bidder, the mandamus should be awarded. It is accordingly so ordered.

*Peremptory mandamus awarded.*